Good morning. I have the pleas of the court, counsel. My name is Tom Condit. I'm a local here from Cincinnati. And this case is an appeal by the Bray family from a final judgment of the district court dismissing under Civil Rule 12b-6 their Bivens claims against two U.S. Marshals. The claims involved violations of the Fourth Amendment inside the Bray home while the Marshals seized property pursuant to a writ of execution that it issued in a goes to absolute quasi-judicial immunity awarded to the U.S. Marshals. And I would frame the issue as whether law enforcement officials are entitled to quasi-judicial immunity for discretionary acts taken while complying or attempting to comply with a judicial order. And we really seem to have a collision here between the doctrines of quasi-judicial immunity and the doctrine of qualified immunity, which by its very definition in Harlow v. Fitzgerald gives qualified immunity for discretionary acts of public officials that are objectively reasonable. It seems to me what happened in this case with the writ of execution and with how the issuing judge interpreted it after this lawsuit was filed is that the writ of execution is a document that is giving absolute immunity to the discretionary acts of the U.S. Marshals. So much was done here that was not ordered. Well, counsel, in determining whether the actions exceed the scope of the writ and evaluating discretion, don't we have to look at the reasonableness of the actions in support of execution of the writ? Well, again, reasonableness of actions is a qualified immunity principle, not an absolute immunity principle. The point of absolute immunity is that we don't even want the executing officers to have to prove their reasonableness. If they're following what they're compelled to do, then they're going to be immune even if it's unreasonable. So on the absolute immunity grounds, are we looking simply at the seizure of the person or the seizure of the property that exceeded the scope of the writ? Yes and no. The officer's got immunity for placing Mr. Bray under arrest in his own home for four hours. And I don't think, as I said in the brief, there's no doubt it was an arrest. I mean, he was not allowed to leave his sofa. He was not allowed to use his phone to call his attorney. I mean, he was locked down in his own house. So there's no doubt that was an arrest. But it's not otherwise, the absolute immunity issue is not otherwise about the seizure of property. I think the way we framed it up in the brief, it's the fact that they did a warrantless search of the entire house. Now, that was their discretionary call. And if there was some ambiguity in that order about what should be seized or even where they should look for it, you know, the one of the orders, and I'll find which one it is here because there were two orders that were issued. The second order, not the original writ, but the order that kind of reactivated it, document 44, it says the marshal is not required to levy upon all the property at the same time and may make successive levies on the same writ. So really, once they decided, and quite frankly, I think they were following what Planned Parenthood's attorneys wanted more than they were following what was ordered, if there started to be questions about what should be seized and where are we authorized to start looking for it, they could have gone back, got clarification from the court, and gone back another day. I mean, it's right there in the order that they could do successive executions. So that is our position, that it suddenly, it moved from following an order to using their discretion about what they were going to do on site. If we accept your argument in that regard, don't we then have to go to whether there was qualified immunity? Yeah, we do. Well, why wasn't there qualified immunity? Well, let me ask first, you don't challenge the writ, right? You don't challenge the content of the writ. Why not? I mean, it looks kind of...challengeable. It sure does now, you know. Well, I mean, just on its face, it looks like we want your, we want stuff that you use to read and write with, well, arguably is questionable. I mean, it seems to me that the logical place to challenge this is to say, look at this writ. I mean, yeah, I wonder if a reasonable policeman or officer looks at this writ, might need to do the kinds of things the officer needs to do, and the real problem is the nature of the writ. Published and unpublished? What do you mean by published? Well, I think the writ stated that they could seize any unpublished writings or information that your client had. Right. And that, by the way, is still playing out in front of the district judge here, and it's a unique issue in a case. But it's not challenged? We didn't challenge it. I'm not criticizing you. I'm just trying to...it kind of affects the arguments that you are making that you have this really broad, remarkable writ that you're not challenging. Then you turn around and say, well, the officers were not reasonable in carrying out this really  Yes, I do. And I would say two things about that. One is, you know, the district court's decision in this case, granting absolute immunity... I thought we were talking about a qualified immunity. Okay, you've moved to qualified immunity. Okay, we've gone to the objective reason... I'm not asking about that. You said that was the next step if we assume that you were right on the first one. Right. Well, I'm going to...look, I'll concede, certainly in retrospect, that there are things in the writ that are...leave some open questions about what should be seized. I submit to you, though... But if you...well, I guess my question is, if you're an officer, you get this thing and you assume it's correct. It's not something you're supposed to second guess, which normally that's what a reasonable officer would do, right? And you look at some of this stuff, well, you know, if you're going to do all that, you can't have the person who doesn't want you to do it going around with you. You've got to make them sit down somewhere while you do it. Oh, no. See, I disagree with that. Well... I disagree with that. Well, I disagree with it, and it's very thoughtful to disagree with it, and probably you're right in a sense, but the standard for qualified immunity is not what you should do or what would be nice to do, but what... What's objectively reasonable. Objectively reasonable. And based on... In carrying out this writ. Yeah, based on clearly established law. And I would submit to you, you know, thinking about it, a lot of the Fourth Amendment cases that have been percolating and even decided by the Supreme Court in the last five to ten years, they're really driven by modern technology and new things that are happening with privacy and the Fourth Amendment. I submit to you that the Fourth Amendment violations in this case are the concerns that the authors of the Constitution had 250 years ago. This is clearly established law. You do not arrest someone without a warrant or without probable cause, and you do not do a warrant... Is there an execution that you can keep the person from going around the place with you? That's different from saying you can't move from that sofa. Okay, but in this case, don't you have to take into consideration the history of dangerousness that Mr. Bray had exhibited? I mean, there... And this was known, I believe, to the officers that there had been instances where he had engaged in, you know, violent conduct against establishments. Isn't that a factor that you have to consider? First of all, that's not in the complaint. This is a 12B6 issue, and that will be a very fact-driven and very disputed point if we ever get to discovery. That's why I wrote the complaint with the kind of detail I did. Mr. Bray did prison time in the 1980s. He has been an absolute model citizen since then, and for reasons that would have to be developed beyond this, there is no reason to believe he would commit violence against U.S. Marshals in his own home. That's the problem. I think there's been assumptions here that there's reasonableness with what the Marshals did, and that's fact-driven. Let me just posit this. Okay, let's take that out of the equation and this dangerousness factor that I just raised. But as I believe Judge Rogers said, in serving a writ, why is it unreasonable for an officer to take precautions to control an environment while they make an effort to serve this warrant in a manner that provides the least disruption and risk to all concerned? It's not unreasonable based on the facts of the case, which we've not gotten to yet. So you would concede then qualified immunity? No. On the facts of a given case, it wouldn't be unreasonable. It depends on what those facts are and what they did. It's a fact-driven analysis of what's reasonable. The way this complaint is written and the way even the reason I put in the complaint, I reached out to the Marshals and said, let us help you do this so there's a lot of kids at home. I see your time's almost up. Is it under the execution scheme to get people's property when they owe money that's applicable here, can they take the person's home? Under Ohio law, only after the personal property is sold, and if that doesn't satisfy the judgment, only then can they execute on the real estate. So then you're just out on the street? Well, presumably. And that's the law in Ohio? Yeah, they can foreclose. So you owe a million dollars, you're just out on the street, every time you find a place to live, they can take it from you? Well, and they can take any asset from you. I think you'd become a renter. Yeah, but you can't rent without money, I mean. Well, it's a problem. Well, I'm just wondering if that's really what the Ohio law says. Yes, it says that you can execute on the real estate only after the personal property has been sold, and if that doesn't, if that's not enough to pay the judgment, you can foreclose on the real estate. And I did reserve time, so I'm losing a little bit here, but let me sit down and say, I think the ultimate position we have with respect to either immunity is that the marshals lost their independence, they chose sides, they forfeited the neutrality of the court, they were no longer an arm of the court, they were serving the will of Planned Parenthood's attorneys, not the order of the court. I think we'll live and die on that principle. Thank you, counsel. Thank you. I reserve a little time. Good morning, Your Honors. May it please the Court? If there was a problem with the writ, that's not something that should be visited on the marshal's service or the deputies who executed the writ, and certainly not in the form of personal liability in a Bivens action such as this one. That is the purpose of absolute immunity, to ensure that law... Where would they challenge it, then? Let's say the writ said, all your diaries and love letters. On appeal in the judgment enforcement case, not by bringing a new lawsuit against the marshal's service. Indeed, one of the purposes of absolute immunity for officers who execute court orders is to ensure that parties who are aggrieved by an order of a judge take an appeal from that order in the proceeding in which the order is issued, so that they don't... Pretty remarkable order. It is a broad order. Yes, it is, Your Honor. It's not broad. It's focused on his intellectual activity. It's like, we don't want you thinking this way. What I read it, I mean, I got it right in front of me. Just like anything, all books, exception of children's books, including materials written by the defendant, published and unpublished. That's just like a smack on the side of First Amendment liberty, it seems to me. How much more advice can you get than that? In the home, he can't have his own books. It's just astounding to me, but I agree with you. They don't challenge it, or maybe they didn't challenge it in the context of this case, but it certainly colors what's going on here when you have a writ. You say, well, it's a little broad. It's remarkable. Did you all draft this? No, Your Honor. The federal government was not a party to the underlying lawsuit. This case arises from a lawsuit between private parties. The federal government was not a party to the judgment enforcement case. It was not a party to the original civil suit against Mr. Bray. If they're not a party, they ought to be a little bit sensitive to the freedoms of Americans, I would think, but go ahead. Do the marshals still have the luxury when they get an order of deciding whether it is overbroad or not? That's absolutely right, Your Honor. That's correct. The Marshal Service is indeed sensitive to the rights of citizens. At the same time, how— Is it sensitive just to have people crawling over your house and you don't even know who they are? Well, Your Honor, a federal district court did issue this order after full adversarial proceedings and— But it doesn't say that in the order, though, right? But it is clear from the complaint that there were proceedings in the judgment enforcement case and, of course, that's how Rule 69 procedures work. In any event, though, I think— I guess what I'm asking is, they say, I don't know, it's just a complaint. I mean, maybe it won't be shown to be true when the facts come out. As I understand the complaint is that they sit there, the guy can't move off of his couch, and doesn't know who's going through all of his papers. Clearly, they've got to go through the papers. It says go through his papers. He doesn't even know who they are. I mean, doesn't he have a right to know this person is performing this kind of search for— He knows that the— Apart from immunity, isn't that something that you would think would be part of the nature of what you would do? He knows that the marshal service is there on the authority of a federal court order to enforce that order, and it's commonplace when the marshals execute writs of attachment to bring movers, for example— Why shouldn't we say, apart from whether it's clearly established, that if you've got people rummaging through your house in a case that at least appears to involve somebody's private intellectual activity materials, that they should at least know who those people are and what they're doing? Well, that's not settled law now. If this court were to announce that, it would be— Under Saucere, we have two steps, right? We can say this is unconstitutional, but there's qualified immunity, right? You may, yes. Okay, so if we want to, why wouldn't that be unconstitutional? Because it's not per se—nothing in the Fourth Amendment necessarily requires that every person at the time of the execution of a warrant or a writ or something like that requires that every person who is present be identified. The ultimate test is reasonableness— But anonymous people go and do it. Well, they weren't known to the braze at the time. However, they were there under the authority of the marshal's service. And the ultimate test is reasonableness. And here, in this case, on this complaint, there is no allegation that any of the unknown persons did anything that they should not have done. The complaint simply— How are they supposed to know if they're stuck on the sofa? They don't know. Well, Mr. Bray was on the sofa, but there's no allegation that— What, he's supposed to have agents going around with him? Well, it's the response— It's a little bit strange to say, well, we don't have any allegations of what they did when they were going through his library when he's not allowed to go into the library with them. Well, the only allegation is that unknown persons were present. That's it. And that's all there is in the complaint. And it is established that officers can bring the resources they need to execute a warrant. I have some difficult questions. I have a couple more questions, and then I'll recede. Is the purpose of this just to get money? The purpose of this execution has no other purpose but money, ostensibly, right? It is to satisfy the judgment— You owe money. But that underlying suit, presumably you would say this would apply just as well in another kind of suit, like, let's say, somebody tripped on your front lawn and suffered ten millions of dollars worth of damage and sued you. Then this could happen to you, then, right? Then the lawyer for the other side could come and make you sit on the couch and go through all your papers and everything. If a judgment—sure, if a judgment was returned— It doesn't have anything to do with the underlying—the nature of what they're authorizing here doesn't have anything to do with the underlying basis for the money they owe. That's absolutely correct. That's absolutely correct. It's a new lawsuit. And the other is the question I asked them. Is there no limit under Ohio law or whatever the relevant law here as to what ultimately is taken away from you, so you lose your home and your money? I mean, some people could conceivably have a judgment against them for, let's say, negligence that is multiple times their net worth, right? That's right, yes. It's easily conceivable. Are they just then out on the street? I mean, they don't get to eat. They don't get to sleep because their property—there must be some limit in there. That depends on the scope of the— That's what I'm asking. Yes, it depends on the scope of the homestead exemption under Ohio law. That's what I'm asking. You don't know what the scope of the homestead exemption is? My understanding is that the property—real property can be sold after the personal property. So there's no homestead exemption? You just lose your home? It's a partial homestead exemption. It doesn't—I don't believe it exempts the home entirely. Well, I mean, it goes a little bit to one of the issues, which is this videotaping. I mean, the videotaping is so that they can sell their home. I just find it amazing under Ohio law that you just lose your home, so you—and you don't get any money to rent a home, so you're homeless because you have a judgment against you for negligence? If the—I understand— Is that the way the system works? I understand that Your Honor is troubled by that, but that is an issue for the judgment enforcement case. It is not—if any concerns— With whether you videotape the place, he's a little concerned that these people are videotaping his whole home, and the reason is because they're going to sell his home out from under him, right? But is that really the reason, the sole reason for the videotaping? It seems to me that the videotaping has a dual purpose. One is, it is a type of inventory, which is just as much for the protection of the homeowner as it is for those seizing property. If you're going to serve as a documentation of what is, in fact, there, if that enables Mr. Bray to make a claim, if ultimately he prevails and there's something that he says was there and they say it wasn't, I mean, isn't there a dual protection? Yes, that's correct, Your Honor. It's documentary evidence, and in that respect, it protects everyone. It protects— In your case, were the marshals the one utilizing the video? The record doesn't tell us offhand. Don't we need to develop the record to find that out? No, the marshals certainly, on this complaint, authorized that, so you can assume that. Nevertheless— The marshals authorized that? I think you can assume that on this complaint, yes. So it's your position they had implied or implicit authority to take actions that were not enumerated in the writ? Yes, Your Honor, yes, and as the district court held here. And what's the limit on that? Where are the limits of their authority? Things that are fairly implied from the terms of the court order are protected by absolute immunity, and now we're speaking of absolute immunity. It's also reasonable under qualified immunity. It certainly didn't violate any clearly established Fourth Amendment right. But coming back to absolute immunity— For example, the marshals were the ones that would have to make that determination? They could make that determination, yes, Your Honor. Well, they did in this case. Let me rephrase that. In this case, they made that determination. On this complaint, yes, it charges the marshal service with responsibility for the videotaping happening. But in Cooper v. Parrish, this court recognized that the order in that case was broad enough to authorize the officers there to do things that were not explicitly spelled out in the orders that they were enforcing, including the seizure of a management company. So this court has recognized that implied authority can be found in court orders, and that can be the basis for absolute immunity. And that makes sense, because a court order, in a sense, is like any other legal authority or document. Absolute immunity or qualified immunity? I'm speaking absolute immunity right now, and Cooper disposed of the case on absolute immunity grounds. Court orders can say things by fair implication, just as can a will, a statute. Isn't it, sort of inferentially, wouldn't it be extraordinary for a court to dictate every step of how a writ would be executed? I mean, in order to do that, the court would have to have incredible knowledge about contents, location. They can't do that. So they would do the broad, I mean, maybe not as broad as this writ, but certainly implicit, as you said, in that. Wouldn't they have to give the professional law enforcement officers some discretion in achieving the objective of that writ? That's correct, Your Honor, yes. And qualified immunity certainly always protects discretionary action, but so does absolute immunity, because, again, some things will be fairly implicit in a court order. For example, here the district court, in the judgment enforcement case, authorized explicitly entry on the premises. It also authorized explicitly the seizure of identified items. Necessarily implicit and clearly implicit is, upon entry to seize property located throughout the residence, is that the officers could conduct a search. So let me stop you there. So let's say, since they authorized him to seize the personal papers in the property, if Mr. Gray had one of those pod storage containers in the back, which contain papers, is the writ broad enough to cover that? A pod container in the back. Yeah. You know that can you see on TV, when you look at the pod? Yes, I'm familiar with it. That might be a closer call, Your Honor, because it authorized entry on the premises, and I think if the premises are the real property, writ large, perhaps then, yes, maybe entry into the pod. And certainly I think under those circumstances, it's unclear. If absolute immunity didn't cover that hypothetical, then qualified immunity would, because if entry on the premises is authorized, an officer could conclude that that includes storage areas on the premises. So, yes. Counsel, it seems to me that there's a strong argument to be made that the record needs to be developed in this case in order for this court to make the proper decision. We may arrive at the same outcome that we currently have, but do you disagree with that, that there is not a need to develop the record to answer these questions that are being asked? I very strongly disagree with that. First, you have the writ in front of you, which can be considered, of course, at the 12B6 stage. And, you know, as I say, Cooper extended absolute immunity for analogous seizures, including restraint of persons on the premises during the execution of the orders in that case. So Cooper, as precedent, disposes of the seizure of Mr. Bray, but qualified immunity would also give you a basis to affirm that, because in light of Michigan v. Summers, that was a limited restraint. And really, the seizure of Mr. Bray and what I call the organizational approach of not including the Brays and what property they were going to take out of the house, that is the basis for the claim. That's all that's argued here, and there's ample basis in the record on which you can affirm. Is there some limit on whether the marshals can ever second-guess a writ, or no matter what the writ says, then they're protected? So the writ says you can only seize Catholic literature, you can't seize Protestant literature, or the writ says you can pump his stomach to get property or some other thing that's clearly on its face illegal. Are they protected by absolute immunity in those kinds of extreme situations? Absolute immunity doesn't turn on... That's an answer, no question. I'm sorry. If the judge exceeds his authority, then the law recognizes that the officer would not have the derivative immunity. So if it's just, would not have it. Would not have it if the judge has clearly exceeded his authority, such that... So if this thing clearly exceeded his authority, then the marshals would not have absolute immunity. Authority in absolute immunity terms, absolute immunity of the judge, and all the cases say this, including this court's cases. If the judge acted in the clear absence of subject matter jurisdiction... Well, then in my example, he exercised in the scope of his authority. He said you can pump his stomach, and you can search for materials based on which party they support, which religion they support. The judge would still get absolute immunity. You'd say in those situations, the marshal would get absolute immunity. Yes. In those situations, the marshal would. Absolute immunity sometimes does protect things that we would just assume not protect, but it's important to society and to ensure that the orders of courts in the general run of cases are enforced. Thank you, your honors. Counselor? Thank you. It looks like I have three minutes, your honor. Let me just try to hit three points quickly, or four. One is, I agree with Mr. Montague's last answer. Absolute judicial immunity and quasi-judicial immunity can protect and cover and immunize some appalling conduct. I've seen it. It's immune, but it's got to be ordered. As soon as it converts to discretionary. In the context of that colloquy, that was my question. Assume that it was ordered. That's what he was saying. I cited in my reply brief, Malley v. Briggs, which is a qualified immunity case, but as I indicated, it talks about absolute immunity. It talks about how when officers are exercising discretion, it's desirable that they reflect on what they're going to do when they're exercising their discretion. It's very consistent with that. As soon as the marshals move into things that aren't ordered and start making their own call on what they're going to do and how they're going to do it, it's perfectly consistent with Malley v. Briggs to move it to qualified immunity. The other thing, Cooper v. Parrish is not binding here. I addressed this in the brief. In that order, it explicitly authorized detaining people, and it explicitly authorized seizing everything. That was a very broad order. There weren't things implicit there. They were in the order. A hypothetical, I don't want to get away from here without, part of this thing, part of keeping Mr. Bray on the couch was supposedly a safety concern. I'm sure if we get discovery, we'll hear about that. Could they have strip searched the Brays' daughters when they came home from school out of a safety concern? At some point, you have to recognize the marshals took this over on their own. Let me ask you this then. You say at some point, if we treat this as a qualified immunity case and go to the first step before going to the second step, which is within our discretion under the Supreme Court's recent decisions, then we can look and see where the line is drawn as to what's constitutionally permissible and what's not, even if the officers had no way of knowing ahead of time that that was the rule. Where should the line be drawn? Clearly, you can't strip search the daughters, but presumably you can have the person stay in one location in the house while the people go through the rest of the house. You would like something that would say, if somebody's going through the house, the person has the right to know who it is and what reason there is for going around the house. I guess that's sort of central to your complaint. Is that right? From a privacy issue of the privacy of the home. What's the strongest case that would support that limitation? Wells versus Wisconsin. I know you only have a little time. What other kinds of limitations ought there to be in a case like this? Where you assume that a writ like this is okay, what should the Constitution tell police people not to do when they're executing such a writ? One is, at least inform the person of who's doing what inside his house. What else? The other thing is, detaining someone is one thing. Locking them down on a sofa under armed guard for four hours in his own house is another thing. There's special things in the case law about the home. They could have said, look... What do you mean, locking him down? He had a lock on him? No, no. I mean, he couldn't move off the sofa in an armed... They isolated him to the sofa. They isolated him to the sofa. According to the complaint, when the daughters came home, the daughters got upset and they'd leave. They were allowed to leave. They could have let Mr. Bray go out in the front yard. They could have let him call his attorney. I mean, they'd locked him down. I mean, it's my phrase, but that's too much. But didn't they call his attorney? The marshal called and left me a voice message. Yes, the marshal left me a voice message, which I retrieved after a delay, but the point is that the... I'm just trying to get some guidance as to what you think so that if you're inclined to do that, we'll know what we're doing. Your Honor, for 24 years, I've been representing pro-life people and other Christian activists, and I've said many times, you see things in abortion cases you will never see anywhere else, and therefore, I can't come in a case like this and start giving you factually analogous cases. I mean, the novelties that come up when I represent pro-lifers is astounding, and this is a beautiful example of it. If I may say one more thing just to help. Your Honor asked questions, which I appreciate, about homestead exemption and losing the home under Ohio law. Michael Bray, we filed an affidavit in the underlying case. I think it's document number 19. I would just encourage you to read that. That really gives facts about the underlying case, the judgment out in Oregon, how little Mr. Bray had to do with anything that went on. I mean, the judgment against him is astounding. You're not challenging the judgment. I mean, that's like saying he got sued in tort, and he wasn't really negligent. I mean, that's beyond our... Well, it is, but... We don't have time. Well, the affidavit's easy to read, and the reason I bring it up is just because you were asking questions about someone losing their house. I'm assuming they owe the money. I can't believe that you're out on the street just because you owe a lot of money in Ohio. And this is all I wanted to reference as far as the underlying facts. A lot of what was happening in Oregon was punitive damages, not dischargeable in bankruptcy.  There's a pending case right now, a pending issue before the trial judge about which homestead exemption applies. But almost for certain, unless the new homestead exemption applies, they're going to lose their house. Okay. Questions? Thank you. Thank you very much. Case will be submitted. You can call the next case.